IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CESAR GEOVANNY AGUILAR MATEO, | § | |
| #A060637736, | § | |
| MOVANT, | § | |
| | § | |
| v. | § | CASE NO. 3:22-CV-1615-M-BK |
| | § | (CRIMINAL NO. 3:19-CR-500-M-2) |
| UNITED STATES OF AMERICA, | § | |
| RESPONDENT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this civil action was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition on the *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 filed by Movant Cesar Geovanny Aguilar Mateo (Mateo). As detailed herein, the motion should be **DENIED**.

**I. BACKGROUND**

Federal Bureau of Investigations agents identified Mateo—at the time a lawful permanent resident—as an MS-13 gang member going through the gang initiation process. Crim. Doc. 59-1 at ¶¶ 12, 15, 93.[1] Through an investigation that included surveillance, confidential sources, and cooperating individuals, agents learned that Mateo participated in marijuana distribution and served as a bodyguard for a higher-ranking gang member. Crim. Doc. 59-1 at ¶¶ 15, 21. He accompanied the higher-ranking gang member during gang activities such as assaults and gang-

---

[1] References to Mateo's criminal proceeding—3:19-cr-00500-M—are prefaced with "Crim. Doc." References to the Section 2255 proceedings are prefaced with "Doc."

related murders. Crim. Doc. 59-1 at ¶21. Mateo also trafficked firearms to other MS-13 gang members for use in drug trafficking. Crim. Doc. 59-1 at ¶22.

Mateo was charged in a two-count indictment with conspiracy to possess with intent to distribute a controlled substance (Count One) and possession with intent to distribute a controlled substance (Count Two). Crim. Doc. 1. Mateo pled guilty to Count Two of the indictment pursuant to a written plea agreement in which the government agreed to dismiss Count One. Crim. Doc. 41.

The Court sentenced Mateo to 18 months in prison[2], along with a two-year term of supervised release to dissuade him from illegally reentering the country in the future. Crim. Doc. 70 at 2; Crim. Doc. 93 at 9-10.

Months after the Court entered judgment, Mateo filed a *pro se* notice of appeal. Crim. Doc. 88. On direct appeal, his attorney filed an *Anders* brief arguing that there were no nonfrivolous grounds to appeal Mateo's sentence or conviction. *See United States v. Mateo*, No. 21-11158, 2022 WL 2187853, at *1 (5th Cir. June 17, 2022) (unpublished); *see also* Crim. Doc. 101; *Anders v. California*, 386 U.S. 738 (1967). Mateo filed a response raising ineffective assistance of counsel claims, but the Fifth Circuit found no nonfrivolous issues for appellate review, granted the *Anders* motion, dismissed the appeal, and declined to address Mateo's ineffective assistance of counsel claims without prejudice to his ability to pursue them on collateral review. *See id*.

---

[2] Mateo was released from BOP custody on July 8, 2022. Doc. 8 at 4; Doc. 12 at 2.

Mateo then filed this motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.  Doc. 1; Doc. 4.  The Government filed a response.  Doc. 8.  And Mateo filed two replies.  Doc. 12; Doc. 14.

**II. ANALYSIS**

After conviction and exhaustion or waiver of the right to direct appeal, the court presumes that a defendant stands fairly and finally convicted.  *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc)).  But under 28 U.S.C. § 2255, a petitioner can collaterally challenge his conviction if: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'"  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).  Section 2255, is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice."  *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

A district court may deny a Section 2255 motion without conducting any type of evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief…"  28 U.S.C. § 2255(b); *United States v. Rivas-Lopez*, 678 F.3d 353, 358 n. 35 (5th Cir. 2012).

**A.  Prosecutorial Misconduct and Breach of the Plea Agreement (Claim 1)**

Mateo's first claim for relief has two parts.  He claims that the Government violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) by withholding evidence.  Doc. 1 at 3.  He also claims that that the Government breached the plea agreement by failing to honor promises not

to deport him at the end of his prison sentence and to help his daughter move to the United States from Honduras. Doc. 1 at 4.

Regarding the *Brady* claim, Mateo contends that the Government failed to disclose a series of notes, recordings, and Form 302 reports. Doc. 1 at 3. This claim is meritless for multiple reasons, the first being that it is conclusory. To prove a claim for *Brady* violation, a petitioner "must show: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the prosecution; and (3) the evidence was material." *Reeder v. Vannoy*, 978 F.3d 272, 277 (5th Cir. 2020) (internal quotation marks omitted) (quoting *United States v. Glenn*, 935 F.3d 313, 319 (5th Cir. 2019)).

Mateo does not meet that showing, as he does not explain how the materials were favorable, much less material. He appears to speculate that, if produced at an evidentiary hearing, these items would be found to be exculpatory. Doc. 12 at 1. Such conclusory *Brady* claims are insufficient to warrant relief under Section 2255. *See*, *e.g.*, *United States v. Edwards*, 442 F.3d 258, 268 n.10 (5th Cir. 2006) (rejecting Section 2255 evidentiary hearing due to "speculative and conclusory nature of the [movant's] allegations with respect to both the suppression and materiality *Brady* prongs," and noting that an evidentiary history would "serve as nothing more than a fishing expedition").

Second, a knowing and voluntary plea agreement waives all non-jurisdictional defects in the proceedings, including any prosecutorial misconduct and *Brady* violations. *See United States v. Gunelsman*, 643 F. App'x 348, 354 (5th Cir. 2016) (per curiam) (waiving prosecutorial misconduct claim) (citing *Murray v. Collins*, 981 F.2d 1255, 1992 WL 387015, at *3 (5th Cir. 1992) (per curiam)); *United States v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (per curiam) (waiving *Brady* claim).

Contrary to his assertions, the record shows that Mateo's guilty plea was knowing and voluntary. In the written plea agreement, Mateo averred that "[t]his plea of guilty is freely and voluntarily made and is not the result of force or threats, or of promises apart from those set forth in this plea agreement [, and] [t]here have been no guarantees or promises from anyone as to what sentence the Court will impose." Crim. Doc. 41 at 6. Further, at the rearraignment hearing, Mateo confirmed that he understood the rights he was forfeiting by pleading guilty and the consequences of his plea. Crim. Doc. 95 at 9-10. He confirmed that he understood that he should not depend or rely on a statement or assurance from anyone as to what his sentence would be because only the judge can make that decision. Crim. Doc. 95 at 11. He confirmed that he understood the elements of the offense and potential penalties (including possible deportation), that no one had tried to make or coerce him to plead guilty, and that no one made any promises to him other than what was in the plea agreement. Crim. Doc. 95 at 13-14, 15, 19.

The written guilty plea form signed by Mateo is *prima facie* proof of the knowing and intelligent nature of his guilty plea. *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1250 (5th Cir. 1986). And a defendant's avowal that his plea is freely and voluntarily made, and that he understands the nature of the charges against him and the nature of the constitutional rights that he is waiving, creates a presumption that his plea is valid. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).

Mateo has not overcome that presumption. The only argument he offers about the voluntariness of his guilty plea—besides his argument concerning the ineffectiveness of his counsel, which is addressed below—is that he was placed under duress by MS-13 to plead guilty. Doc. 1 at 8. But, as shown above, this is contrary to his written plea agreement and

representations during his rearraignment hearing. And "when a Section 2255 movant makes allegations that conflict with his sworn testimony at the plea hearing, he must produce 'independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties…'" *United States v. Morrison*, MO-14-CV-071, 2016 WL 5886697, at *6 (W.D. Tex. Aug. 10, 2016) (citing *Cervantes*, 132 F.3d at 1110 (citing, in turn, *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)).

Mateo offers nothing like that here. His conclusory, self-serving argument that he was coerced into pleading guilty does not warrant an evidentiary hearing or overcome his solemn declarations in open court, and Mateo has waived his *Brady* claim by his knowing and voluntary guilty plea.

Finally, Mateo did not raise the *Brady* claim on direct appeal, so it is procedurally defaulted absent a showing of both (1) cause excusing his procedural default and (2) actual prejudice resulting from the error. *United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)); *United States v. Alanis*, 88 F.App'x 15, 22 (5th Cir. 2004) (per curiam) (finding prosecutorial misconduct claim must first be raised on direct appeal). An exception to the cause and prejudice requirement is reserved for the "extraordinary case…in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

That is not the case here, as Mateo does not allege anything that would meet either the cause and prejudice or the actual innocence requirements to excuse his failure to raise procedural misconduct on direct appeal. This claim is therefore procedurally barred.[3]

As for the claim that the Government breached the plea agreement, this too is belied by the record. The signed plea agreement—which confirms that it "is a complete statement of the parties' agreement" and that "[n]o promises or representations have been made by the United States except as set forth in writing in this plea agreement"—does not contain promises that Mateo would not be deported or that the Government would help Mateo's daughter move to the United States. *See generally* Crim. Doc. 41. In fact, it says the opposite by noting that Mateo's conviction might be a deportable offense. Crim. Doc. 41 at 2-3. Further, at the rearraignment hearing, Mateo testified that the Government made no promises other than those contained in the plea agreement. Crim. Doc. 95 at 15.

A plea may be rendered involuntary due to an unfulfilled promise. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). But when—as is the case here—an alleged unfulfilled promise does not appear in the written plea agreement and such promise is inconsistent with representations made in open court, the movant faces a heavy burden to get relief under Section 2255. *See Cervantes*, 132 F.3d at 1110. Specifically, he must show "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *Id.* And he must make this

---

[3] Mateo argues that he raised the *Brady* claim in his response to his counsel's *Anders* brief on direct appeal, but examination of his filing shows that he did not raise a *Brady* claim. *See Mateo*, No. 21-11158, (Doc. 28) (Movant's response to *Anders* motion).

Page **7** of **12**

showing with independent indicia of the likelihood of his allegations, usually in the form of one or more affidavits from reliable third parties. *Id.* (citing *Harmason*, 888 F.2d at 1529).

Mateo fails to produce any independent indica of the likelihood of his allegations, which run directly counter to the signed plea agreement and his in-court representations. Thus, he has failed to show any entitlement to relief—or even an evidentiary hearing—on this issue.

In sum, Mateo's first claim for relief—both sub parts of it—are meritless.

### B.  Ineffective Assistance of Counsel (Claim 2)

In his second claim for relief, Mateo argues that his counsel was ineffective for "affirmatively misrepresenting the immigration consequences" of his guilty plea. Doc. 1 at 9. Mateo avers that his counsel did not tell him until after judgment was entered that he would be deported and that he would not have entered a guilty plea had he known that. Doc. 1 at 10. He argues that the immigration consequences of his guilty plea would have been readily discernable to a competent attorney, and his counsel's unspecified advice on the issue was incompetent. Doc. 1 at 11.

To establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id*. at 697.

To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. at 687. The proper measure of attorney performance is reasonableness under prevailing professional norms. *Id*. at 688. That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a strong presumption

that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

Mateo does not explain with any particularity how his counsel misrepresented the immigration consequences of a guilty plea. *See* Doc. 1 at 9-11. As explained above, the plea agreement clearly states that Mateo could be deported based on the conviction but was choosing to plead guilty anyway. Crim. Doc. 41 at 3. And Mateo averred under oath that he consulted with counsel about the plea agreement and the immigration consequences of a guilty plea in particular. Crim. Doc. 95 at 14-15. To the extent that he claims that his counsel offered advice that was contrary to the plea agreement, such an allegation, without any specifics, is too conclusory to warrant relief. *See*, *e.g.*, *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("This Court has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.") (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

As for prejudice, in the context of a guilty plea, the movant, to show prejudice, must show "that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In the immigration advice context, the Court considers the totality of the circumstances, including evidence to support the movant's assertion, his likelihood of success at trial, the risks the movant would have faced at trial, the movant's representations about his desire to retract his plea, his connections to the United States, and the district court's admonishments. *See United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014).

Mateo does not address any of these factors. He only asserts in conclusory fashion that "he would not have entered the guilty plea" had he known of the immigration consequences of his plea. Doc. 1 at 10. Such conclusory assertions are insufficient to warrant habeas relief. *See*,

*e.g.*, *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross*, 694 F.3d at 1011-12); *see also United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

At any rate, the bulk of factors outlined in *Kayode* do not weigh in Mateo's favor. There is no evidence—besides Mateo's conclusory, self-serving assertion in his brief—that he would have insisted on going to trial if he knew of the immigration consequences of a plea. In fact, the evidence is to the contrary. Mateo was informed in the plea agreement and at his rearraignment hearing about the potential immigration consequences of his plea, including deportation; yet he pled guilty anyway, explicitly acknowledging that he was he was aware of the potential immigration consequences. Crim. Doc. 41 at 2-3; Crim. Doc. 95 at 15-16. Further, Mateo has not shown that he had any likelihood of success at trial. And, by pleading guilty, he received a three-point point reduction for acceptance of responsibility, so he would have faced more risk had he gone to trial. *See* Crim. Doc. 59-1 at 10; *see also*, *e.g.*, *United States v. Hoang*, Civil Action No. H-15-2451, 2016 WL 1392549, at *22 (S.D. Tex. Apr. 8, 2015) (no prejudice shown in context of failure-to-advise-of-immigration-consequences claim where "[t]he evidence of guilt was strong," "by pleading guilty, [the movant received a three-point reduction for acceptance of responsibility[,]" and the Court had advised the movant about possible deportation consequences of pleading guilty).

In short, Mateo fails to adequately show ineffectiveness or prejudice under *Strickland*. His ineffective assistance of counsel claim is meritless, and he is not entitled to habeas relief in relation to it.[4]

---

[4] In his reply briefs, Movant suggests that his counsel was also ineffective for not filing a timely notice of appeal despite instructions to do so. *See Roe v. Flores-Ortega*, 528 U.S. 470 (2000);

### C. Evidentiary Hearing

Mateo seeks an evidentiary hearing. *See*, *e.g.*, Doc. 12 at 1 (noting, in context of *Brady* claim, that "[t]he government has the resort to producing those materials to the district court, in an evidentiary hearing"). But Mateo is not entitled to an evidentiary hearing. "When the files and records of a case make manifest the lack of merit of a section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also Cervantes,* 132 F.3d at 1111 (petitioner was not entitled to evidentiary hearing because he did not meet his burden of proof under Section 2255). Accordingly, because Mateo's claims lack merit for the reasons stated above, no evidentiary hearing is required in this Section 2255 proceeding.

### III. CONCLUSION

Mateo's Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on October 26, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

Doc. 12 at 2, 4. But even though Mateo's notice of appeal appears untimely, the Fifth Circuit did not dismiss it as such, instead concluding that, substantively, Mateo failed to present a nonfrivolous issue for review. *See Mateo*, No. 21-11158, 2022 WL 2187853, at *1. Therefore, even if Mateo had asked his counsel to appeal his conviction and sentence and his counsel failed to do so, Mateo was not prejudiced, so this claim is meritless.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).